**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAWN McCLENDON** | : | **CIVIL ACTION** |
| **2424 N. Marshall Street** | : | |
| **Philadelphia, PA 19133** | : | |
| | : | **NO.  03-1743** |
| **v.** | : | |
| | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA** | : | |
| **Administration Building** | : | **JURY TRIAL DEMANDED** |
| **Room 502** | : | |
| **21st Street, South of the Parkway** | : | |
| **Philadelphia, PA 19103** | : | |
| **    and** | : | |
| **MR. PAUL VALLAS, CHIEF EXECUTIVE** | : | |
| **OFFICER** | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA** | : | |
| **2120 Winter Street, Room 219** | : | |
| **Philadelphia, PA 19103** | : | |
| **    and** | : | |
| **LEONARD HEARD, PRINCIPAL** | : | |
| **WILLIAM PENN HIGH SCHOOL** | : | |
| **Broad and Master Streets** | : | |
| **Philadelphia, PA 19122** | : | |
| **    and** | : | |
| **JIM McANULTY (current)/** | : | |
| **RENAY BOYCE (former), DIRECTOR OF** | : | |
| **SPECIAL EDUCATION** | : | |
| **Special Education Office** | : | |
| **Central Area Academic Office** | : | |
| **Wanamaker Middle School** | : | |
| **11th and Cecil B. Moore** | : | |
| **Philadelphia, PA 19122** | | |

**AMENDED COMPLAINT**

Plaintiff, Shawn McClendon, by and through his attorneys Frost & Zeff herein brings the instant Complaint against the Defendants and alleges as follows:

## INTRODUCTION

1.  This action for monetary relief is brought by Plaintiff to redress the intentional violations by the Defendants pursuant to 42 U.S.C. Section 1983, Section 504 of the Rehabilitation Act of 1973, the Individuals with Disabilities Education Act 20 U.S.C. Section 1400, <u>et seq</u>. and the Due Process and Equal Protection Clause of the Fourteenth Amendment for damages caused by the Defendants failure to properly classify, failure to evaluate, and failure to provide necessary educational services to Plaintiff Shawn McClendon (hereinafter "Plaintiff" or "Plaintiff McClendon").

2.  This action arises under 42 U.S.C. Section 1983, the Individuals with Disabilities Education Act, 20 U.S.C. Section 1400, <u>et seq</u>., (I.D.E.A.), the Rehabilitation Act of 1973, 29 U.S.C. Section 794(a) and  the Fourteenth Amendment.

## JURISDICTION

3.  Jurisdiction is conferred upon this Court by 42 U.S.C. Section 1983, et seq., I.D.E.A., 20 U.S.C. Section 1400, <u>et seq</u>. as amended by Pub.L.No. 105-17 at Section 615(i)(3)(a) (1997), the Rehabilitation Act of 1973, the Fourteenth Amendment, 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343(a) which provides original jurisdiction for Plaintiffs' claims arising under the laws of the United States and other actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

4.  The amount in controversy exceeds One Hundred Thousand ($100,000.00) Dollars exclusive of interest and costs.

5.  Plaintiffs ask this Court to exercise supplemental jurisdiction over their State claims.

## VENUE

6.  All actions complained of herein have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendants who reside and do business within its jurisdictional limits.

## PARTIES

7.  Plaintiff McClendon is an eighteen year old individual who has been determined to be mentally retarded through a multidisciplinary evaluation process given to him.  He resides with his mother in Philadelphia, Pennsylvania, at the above-captioned address.  Plaintiff McClendon is a duly qualified disabled student under I.D.E.A.

8.  Defendant, School District of Philadelphia (hereinafter referred to as "Defendant District") is a public school district established under Pennsylvania law.  It receives federal funds under I.D.E.A.

9.  Defendant, Paul Vallas, (hereinafter referred to as "Defendant Vallas") is the Chief Executive Officer of the Philadelphia School District, conducting business at the above-referenced address.  Defendant Vallas is sued in his individual and official capacity.

10. Defendant, Leonard Heard, (hereinafter referred to as "Defendant Heard") is and was the Principal of William Penn High School, conducting business at the above-referenced address.  Defendant Heard is sued in his individual and official capacity.

11. Defendant, Renay Boyce, (hereinafter referred to as "Defendant Boyce") was at all times relevant herein, the Director of Special Education for the School District of Philadelphia with her principal place of business at the above-captioned address.  At all times relevant herein, she is sued in her individual and official capacity.

-3-

12. Defendant, Jim McNulty, is the Director of Special Education for the School District of Philadelphia, with his principal place of business at the above captioned address. At all times relevant herein, he is sued in his individual and official capacity.

## BACKGROUND

13. The Individuals with Disabilities Education Act (I.D.E.A.) was created to assure that all children with disabilities have available to them a free appropriate public education which emphasizes public education and related services designed to meet their unique needs to assure that the rights of children with disabilities and their parents and guardians are protected to assist states and localities to provide for the education of all children with disabilities and to assess and assure the effectiveness of efforts to educate children with disabilities. I.D.E.A. Section 1400(c).

14. A free appropriate education consists of needed special education and related services designed to meet the child's unique needs, and provided in conformity with certain procedural safeguards specified by the act. I.D.E.A., 20 U.S.C. Section 1414(a)(1)(A).

15. I.D.E.A. requires each local educational agency such as a school district within a state, to identify, locate and evaluate every child with disabilities. Ibid.

16. Disabilities, as defined by I.D.E.A. includes various mental, emotional and physical impairments.

17. The procedural safeguards provided by the Act include but are not limited to the right of the student's parents to participate in the development of an Individualized Education Program (IEP), and to obtain an administrative hearing (and, if needed, an administrative appeal and judicial review) on any complaint concerning the student's education. 20 U.S.C. Section 1401(18).

18. I.D.E.A. requires that before the filing of a civil action seeking relief that is also available under I.D.E.A., a Plaintiff must exhaust the I.D.E.A. procedures. 20 U.S.C. Section 1415(f), and Plaintiff has exhausted all of his administrative remedies.

19. According to the Rehabilitation Act of 1973 29 U.S.C. Section 794a, no person by reason of his or her disability may be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any executive agency. A program or activity is defined as a department, agency, special purpose district or other instrument of a state or of a local government or the entity of such state or local government that distributes such assistance. 29 U.S.C. Section 794(b)(1)(A)(B).

## FACTS

20. Plaintiff McClendon is an 18 year old student who resides in Philadelphia and has attended a number of schools within the Defendant District.

21. Plaintiff McClendon first attended John F. Hartranft Elementary School, scored below average in a city-wide testing program, and failed kindergarten.

22. Plaintiff was retained in first grade, he was working below grade level in reading, math, and comprehension.

23. Plaintiff's mother, Mrs. Maxine McClendon complained to teachers about Plaintiff's reading difficulties and speech impediment. As a result, Mrs. McClendon was informed that Plaintiff would receive speech therapy and that this would improve his reading ability.

24. Plaintiff McClendon was not supplied with speech therapy.

25. Plaintiff McClendon was promoted from second grade to third grade. Speech therapy was referred to again as a necessity for Plaintiff, but he did not receive any speech therapy.

26. Plaintiff McClendon's scores on his second and third grade comprehensive test of basic skills were below average; Mrs. McCledon complained about Plaintiff needing to be evaluated for special education to no avail.

27. Plaintiff would have been retained in the third grade but was assigned to fourth grade due to his previous first grade retention even though he could not put syllables together nor sound out words.

28. Plaintiff McClendon continued to receive below average scores in the third and fourth grade in his comprehensive tests of basic skills, and Mrs. McClendon continued to implore Defendant District to help her son.

29. Plaintiff failed fourth grade, but was promoted due to his prior retention in the first grade.

30. Mrs. McClendon complained that the school had an obligation to give her son the necessary resources such as speech therapy and special education. Furthermore, she did not want Plaintiff McClendon promoted as had been done in the third and fourth grade, due to his failing grades and no comprehension of the skills needed to succeed in all subjects.

31. Plaintiff McClendon did receive some speech intervention in fourth and fifth grades.

32. Mrs. McClendon became disconcerted and complained again because she could not understand why the school would not evaluate her child.

33. Even after Mrs. McClendon complained about Plaintiff not being evaluated, there was still no effort by Defendant District to evaluate Plaintiff.

34.  In fifth grade, Plaintiff was in the fourth percentile for reading and the first percentile for mathematics, according to the 1996 Pennsylvania System of School Assessment: Individual Student Reports.

35.  Plaintiff received failing grades in fifth grade, but was promoted to sixth grade, due to his prior retention.

36.  In sixth grade, Plaintiff McClendon started attending the Elverson Middle School in Defendant District, and again received failing grades.

37.  Plaintiff transferred to John Wanamaker Middle School in seventh grade, but then he returned to Elverson Middle School in eighth grade in September of 1999.

38.  Mrs. McClendon complained to counselors and teachers that Defendant District needed to retain her son and give him the proper aid, but Plaintiff was assigned to seventh grade against Mrs. McClendon's protests.

39.  Plaintiff McClendon took the Stanford Achievement test in seventh grade and scored "Below Basic" in Reading, Mathematics and Science.

40.  Mrs. McClendon persisted in requesting that Plaintiff be put in a special education program.

41.  Mrs. McClendon was told that Defendant District would continue Plaintiff's speech therapy.  Mrs. McClendon requested educational support and said  that speech therapy was entirely inadequate, because Plaintiff's difficulties ran the gamut from little to no comprehension of basic skills in Reading, Science and Math to a speech impediment.

42.  Defendant District ignored Mrs. McClendon's persistent pleas for evaluating her son and for providing special education to her son.

-7-

43. Defendant District deliberately ignored Plaintiff McClendon's failing grades, prior retention, and his constant scores of "Below Basic/Average" on every test he had taken to this point in time. The Defendants failed to afford Plaintiff a special education.

44. Plaintiff McClendon failed eighth grade in 1999 and was retained, but he was still not evaluated for special education.

45. Mrs. McClendon complained about her son's need for special education once again.

46. There was a meeting between Mrs. McClendon, Plaintiff's teachers, counselors, and the school psychologist, and they informed Mrs. McClendon that Plaintiff would be given help.

47. Mrs. McClendon surmised that the aforementioned "help" meant that Plaintiff would receive special education.

48. Defendant District still failed to evaluate, qualify, and approve Plaintiff McClendon for special education while he was repeating eighth grade, and instead, just put him in a Resource Classroom.

49. Mrs. McClendon was under the impression that because Plaintiff was now finally in a special education classroom, that Plaintiff now had an IEP, when in actuality there was no IEP for special education. There was only an IEP for speech therapy.

50. While Plaintiff McClendon was in a Resource Classroom with the resource teacher, Ms. Taylor, Plaintiff began to attain better grades.

51. In 2000, Plaintiff entered into the ninth grade and attended William Penn High School. At this time, he was placed back into regular education classes.

52.   Mrs. McClendon complained once again, and met with Ms. Betty Barnes, the special education coordinator, and informed Ms. Barnes that Plaintiff should be in special education classes not regular education classes.

53.   Ms. Barnes in turn informed Mrs. McClendon that there was absolutely nothing in Plaintiff's school record to indicate that Plaintiff should be in special education classes.

54.   As a result of Plaintiff McClendon being placed into regular education classes, he failed ninth grade and was retained to repeat ninth grade.

55.   While Plaintiff was repeating ninth grade, Mrs. McClendon once again requested that Plaintiff be evaluated for special education.

56.   On December 18, 2001, Mrs. McClendon signed a permission to evaluate paper.  Under reason for referral, it stated at "parents request."

57. Plaintiff McClendon was still left to flounder academically and deteriorate behaviorally without receiving his evaluation and I.E.P., until Mrs. McClendon retained an Attorney in March of 2002.

58.   Counsel for the Plaintiff, on or about March 8, 2002, requested that the Defendant District fund comprehensive, independent psychoeducational and diagnostic reading evaluations, because Defendant District had never conducted an appropriate evaluation of Plaintiff.

59.   A psychological evaluation was done on or about March 15, 2002, by a school psychologist.

60.   Plaintiff's January 25, 2002 Kaufman Brief Intelligence Test (K-BIT) part of his evaluation demonstrated that Plaintiff's vocabulary subtests scores were within the lower extreme range of mentally disabled.

61.  Plaintiff's January 25, 2002 Wechsler Individual Achievement Test (WIAT) portion of his March 15, 2002 psychological evaluation demonstrated that Plaintiff was within the "mental disabilities" range on all subtest areas (i.e. basic reading, reading comprehension, mathematics reasoning, numerical operations, listening comprehension and spelling).

62.  According to the Vineland Adaptive Behavior Scales Interview Edition, results indicate that his overall adaptive functioning is in the low range, and is below the expectancy for his chronological age.  It is at the age equivalent of eleven years old.

63.  It was determined by the March 15, 2002 psychological evaluation that Plaintiff was "eligible for special education and should be considered as a student who has mental retardation (educable)."

64.  On March 15, 2002, the multi-disciplinary team believed that Shawn's degree of need was such that he would not encounter success in the mainstream without specially designed instruction.

65.  A school evaluation report was completed regarding Plaintiff on March 22, 2002.

66.  Plaintiff McClendon was referred for the multidisciplinary evaluation by his mother, Maxine McClendon.

67.  The March 22, 2002 evaluation report stated that, according to current standardized testing (WIAT), Shawn's word recognition skills are at the beginning of third grade level, reading comprehension was at the beginning of third grade, spelling at the end of third grade, and mathematical problems at the mid-third grade level.

68.  In the March 22, 2002 evaluation report, it was recommended that the IEP team consider Shawn to be a student with mental retardation (educable) and in need of specially designed instruction.

69.  There was an IEP meeting on April 30, 2002.

70.  An IEP was drafted on or about April 30, 2002, and was projected to start on May 3, 2002.

71.  This April 30, 2002 IEP was to be in effect until June 3, 2002.

72.  Plaintiff's April 30, 2002 IEP stated that he required special education programs and services, because Shawn's disability affected his involvement and progress in the general education curriculum due to his sub-average general intellectual functioning existing concurrently with deficits in adaptive behavior manifested during the development period that adversely affected his educational performance.

73.  The Pre-hearing Conference document dated April 30, 2002, demonstrates that Plaintiff has some hearing difficulty for which he has received medical treatment.  There is no evidence that Defendant District ever performed a hearing test on Plaintiff, or ever recognized there was a hearing problem.

74.  Plaintiff's April 30, 2002 Notice of Recommended Educational Placement (NOREP) recommendation was for Plaintiff to receive full-time learning support.

75.  On May 1, 2002, Plaintiff's roster was changed from regular education to special education, at the age of 17 ½ years old.

76. Plaintiff McClendon and his mother Maxine McClendon felt that after approximately twelve years of trying to obtain a special education program for Plaintiff, the efficacy of the April 30, 2002 IEP was inadequate because it was too little being done too late.

77. When Mr. Michael Basch, Esquire, was retained to represent Plaintiff, against the School District, Defendant Heard began to retaliate due to Mr. Basch commencing an administrative legal process on behalf of Plaintiff.

78. Defendant Heard, the principal of William Penn High School attempted to suspend Plaintiff almost every week.  These actions culminated into three incidents.

79. Incident #1, on or about April of 2002, Defendant Heard falsely accused Plaintiff of pushing a student.  In reality, Plaintiff was punched by this student, twice in the arm, and Plaintiff was trying to push the student away.

80. As a result of the above allegation, Plaintiff was suspended, arrested, charged with disorderly conduct and went to court.

81. Plaintiff McClendon went in front of Judge Dougherty on April 8, 2002.

82. Mrs. McClendon informed the Judge that Plaintiff was a learning support student, but was not receiving learning support at William Penn High School.  Judge Dougherty ordered an "IEP Forthwith," which resulted in the April 30, 2002 IEP.

83. The charge of disorderly conduct against Plaintiff was eventually dismissed on or about October 16, 2002.

84. Incident #2, on or about May 15, 2000, Plaintiff went into the mens room between classes and saw a group of boys smoking cigars.  An SLC Coordinator came into the bathroom and saw smoke; the group of boys then falsely accused Plaintiff of smoking.

-12-

85. As a result, Plaintiff was suspended for five days for the use of tobacco products; use of tobacco products and was placed on Plaintiff's school record.

86. Plaintiff was also subjected to blood tests, which were negative for tobacco as well as other drugs.

87. On or about March of 2002, the School District falsely altered Plaintiff's school record from "use of tobacco products" to "possession of drug paraphernalia."

88. During the April 30, 2002 IEP meeting, Plaintiff's family requested that this false charge of possession of drug paraphernalia be expunged. It is not known if this charge was in fact expunged.

89. As of May 19, 2002, the "possession of drug paraphernalia" still remained on Plaintiff's school record.

90. Incident #3, on May 9, 2002, a school police officer falsely accused Plaintiff McClendon of being one of three students to assault another student.

91. In reality on May 9, 2002, Plaintiff had been a good Samaritan and had attempted to stop the fight.

92. As a result of this false accusation, Plaintiff was arrested on June 14, 2002.

93. Plaintiff was charged with aggravated assault, reckless endangerment of a person, simple assault, and criminal conspiracy.

94. On or about October 15, 2002, Plaintiff was found not guilty, and all charges against him were dismissed.

95. On May 19, 2002, Plaintiff's psychological evaluation was revised, setting forth the results of additional tests.

96. The Wechsler Adult Intelligence Scale - Third Edition (WAIS) results evinced that Plaintiff's overall intelligence fell within the "Borderline" range of functioning and ranks him at the fourth percentile when compared with others has chronological age.

97. The Beery-Bunktenica Developmental Test of Visual-Motor Integration (VMI) demonstrated that Plaintiff's visual-motor skills fell within the average range.

98. Plaintiff was still found to be mentally disabled.

99. In Defendant's evaluation report dated May 22, 2002, it was noted that Plaintiff did "not exhibit a speech or language disability, and is not in need of specially designed instruction."

100. The conclusion of the May 22, 2002 evaluation report stated: "It is recommended that the IEP team consider Shawn to be a student with a specific learning disability and in need of specially designed instruction."

101. The evaluation report recommended the following: "The specially-designed instruction may include the following: monitoring of school/class attendance, show a model of end-product of directions, check progress and provide frequent feedback often in the first few minutes of each assignment, extended time, short test periods, preferential seating, concrete materials, simplified directions, graphic organizer, repeated directions, guided practice and any others determined by the IEP team."

102. Another IEP was transcribed on June 3, 2002, in which work based learning was applied to transition planning, and specifically designed instruction for students who have difficulty reading texts was also applied.

103. Plaintiff's June 3, 2002 notice of recommended educational placement remained full-time learning support.

104. Due to Defendant District admittedly ignoring its child find obligations for ten years, not evaluating Plaintiff for special education until Middle School, <u>not developing an IEP for special education for him until eighth grade</u>, then losing the IEP and placing Plaintiff in regular education where he was left to flounder and deteriorate, Defendant District entered into a Settlement Agreement with Plaintiff on October 3, 2002.  Attached hereto as Exhibit "A" is a true and correct copy of Plaintiff's October 3, 2002 Settlement Agreement.

105. This Agreement addresses Plaintiff's current IEP needs and his right to compensatory education.

106. Under the terms of the Settlement Agreement, Plaintiff was to attend a full-time learning support program at Douglas High School or another mutually agreeable High School (Exhibit "A").

107. Defendant District knowingly placed Plaintiff in the Douglas High School with the knowledge that this was a disciplinary school, and not an environment which would foster the nurturing emotional and academic support dire to Plaintiff's success as a student and as a human being.

108. Placing Plaintiff in Douglas High School was injurious to Plaintiff's progress as a student and did not afford him the opportunity of a free and appropriate education.

109. The fact that Douglas High School was a disciplinary type High School, was unknown to Mrs. Maxine McClendon.

110. Mrs. McClendon and Plaintiff suffered further persecution and retaliation by Defendant District by Plaintiff being placed at Douglas High School.

111. Plaintiff McClendon started school at Douglas High School on or about September 5, 2002.

112. Plaintiff began school on a Thursday and was informed that he was required to wear a uniform consisting of a shirt and khaki pants, by the following Monday.

113. Plaintiff had the appropriate khaki pants on Monday, but his mother did not have enough shirts for Plaintiff due to family economics. As a result, Plaintiff was suspended for repeatedly not being in uniform, even though there was only one such occurrence.

114. On or about September of 2002, a student started a fight with Plaintiff for no apparent reason; Plaintiff was suspended as a result.

115. The student came back with a gang looking for Plaintiff for the purpose of beating up Plaintiff.

116. Plaintiff's mother, Mrs. McClendon, was made aware of this gang of boys pursuing Plaintiff. As such, Plaintiff's mother did not want Plaintiff to attend Douglas High School any longer.

117. Mrs. McClendon kept Plaintiff at home due to her son being in imminent danger of physical bodily harm.

118. Jim McNulty (current Director of Special Education for the Central Area Cluster) wrote Mrs. McClendon a letter telling her to send Plaintiff back to Douglas High School.

119. Mrs. McClendon wrote a letter to Jim McNulty, Mimi Rose, Esquire, Counsel for Defendant District, and Michael Basch, Esquire explaining that she feared for Plaintiff's safety and felt he was in imminent danger of physical bodily harm at Douglas High School; Mrs. McClendon requested that Plaintiff be sent to Bok Vocational High School (which was in compliance with the Settlement Agreement) (Exhibit "A").

120. Jim McAnulty said he would set-up a meeting to discuss Plaintiff's transfer to Bok Vocational High School, but this has not occurred to date.

121. Ben Tutulio (Director of Vocation at Bok) told Mrs. McClendon that if Plaintiff attended Bok Vocational High School, he would "take Plaintiff under his wing."

122. Michael Basch, Esquire (who was retained by the Plaintiff) then wrote a letter to Counsel for Defendant District requesting that Plaintiff be placed in Bok Vocational High School, and was told by Defendant's Counsel that Ben Tutulio could be hired privately as a tutor for Plaintiff instead.

123. As of the time of the writing of this Complaint, Plaintiff is still waiting to attend Bok Vocational High School.

124. At all times relevant hereto, the Defendant District failed to properly identify, evaluate and create an IEP, and properly place Plaintiff for over ten years. As a result, Defendant District's deliberate indifference, Defendant District failed to provide Plaintiff McClendon with a free appropriate education, causing Plaintiff to be irreparably harmed and to remain at an adaptive functioning age of eleven with a third grade Reading and Spelling capability, and a third to fourth grade Mathematical capability.

125. Failure by the Defendant District to fully and timely comply with the terms of this Settlement Agreement has resulted in additional harm.

126. Plaintiff has been retaliated against by Defendant Heard, as aforementioned in Paragraphs 77-94.

127. A compensatory education award can no longer further the legislative goal of making Plaintiff Shawn McClendon psychologically whole. It is too little too late due to the shocking

unconscionable egregious treatment Plaintiff has been forced to endure from six years old to the present.

128. Nothing in Plaintiff's October 3, 2002 Settlement Agreement Release precludes or diminishes other claims by the parent and/or Plaintiff against the District such as claims for monetary damages. This agreement has exhausted the administrative remedies under the Individuals with Disabilities Education Act. (Exhibit "A")

## COUNT I
## PLAINTIFFS vs. ALL DEFENDANTS
## <u>VIOLATION OF CIVIL RIGHTS</u>

129. Plaintiff McClendon incorporates by reference paragraphs 1 through 128 herein set forth at length.

130. Defendants have not provided Plaintiff with a free and appropriate education and have irreparably harmed him psychologically.

131. Defendants failed to properly identify, evaluate and create an IEP and properly place Plaintiff for over ten years.

132. Defendants continue to fail to properly place Plaintiff in a safe nurturing educational environment, where he will have full-time emotional/learning support.

133. Defendants failure to provide Plaintiff McClendon with a free appropriate public education is a systematic legal violation which violates Plaintiff's civil rights.

134. Defendants owed Plaintiff a duty to provide a free and appropriate public education under I.D.E.A. 20 U.S.C. Section 1400, <u>et. seq.</u>, and the Rehabilitation Act of 1973 29 U.S.C. Section 794 (a).

135.  Plaintiff was retaliated against by Defendant Heard as aforementioned in Paragraphs 77-94; Plaintiff was arrested, charged and was later found not guilty at trial.

136. Defendants further violated IDEA by violating the Settlement Agreement in trying to keep Plaintiff at Douglas High School, which is unsafe, and not mutually agreeable to Mrs. McClendon.

137. Defendants further owed Plaintiff McClendon a duty to implement an appropriate program pursuant to 22 Pa. Code Section 14.36, 342.36 and 342.42.

138. Defendants breached the duties described in paragraphs 13, 14, 15, 17, 19, 30, 33, 42, 44, 48, 49, 51, 57, 81 and 111.

139. At all times material hereto, the actions and inaction of all Defendants were performed under color of state law while acting in their official capacities.

140. All Defendants caused the harm complained of herein in violation of I.D.E.A., the Rehabilitation Act of 1973, and 22 Pa. Code Section 14.36, 342.36 and 342.42.

141. The actions by Defendants constitutes a pattern and practice of failing to provide students like Plaintiff Shawn McClendon in particular, an appropriate education for Plaintiff's educational needs.

142. The actions of Defendants constitutes a pattern of psychologically harming students like Plaintiff McClendon in particular.

143. The actions of Defendants constitutes a pattern and practice of delay so that Defendants do not have to pay, expend and/or provide Plaintiff with services, or trained teachers to help them meet the needs of children and Plaintiff McClendon in particular.

144. The Defendants' actions constitutes a lack of cautious regard for Plaintiff's rights to a free appropriate public education.

145. The Defendants' actions were carried out wilfully, wantonly, maliciously, and with such reckless disregard for the consequences as to reveal a conscious indifference to Plaintiffs' rights to a free appropriate public education.

146. As a result of the above-described violations, Plaintiffs suffered damages as described above.

**COUNT II**
**PLAINTIFFS vs. ALL DEFENDANTS**
**42 U.S.C. SECTION 1983 AND IDEA**

147. Plaintiff incorporates by reference paragraphs 1 through 146 herein set forth at length.

148. Defendants failed to meet the educational needs of Plaintiff McClendon through their policies, customs, patterns, and practice of failure to properly identify, evaluate, create an appropriate IEP for Plaintiff and properly place Plaintiff.  The Defendants' conduct consisted of the failure to promulgate policies, customs, patterns, practices and procedures and a failure to train as follows:

a)      having a large number of inherently deficient policy directives and/or administrative procedures to provide access of a free appropriate public education to Plaintiff McClendon;

b)      continuing with policies, procedures, customs and practices which Defendants knew or should have known were causing injuries to students despite the obvious need to change, modify and/or correct said policies;

c)      failing to provide Plaintiff McClendon with a free appropriate public education; and

d)      failing to identify Plaintiff McClendon as an exceptional student under IDEA.

149. The above-described actions of the Defendants were the direct and proximate cause of Plaintiff's injuries aforesaid.

150. By reason of the aforesaid, Plaintiff's civil rights were violated as guaranteed by the federal statutes.

151. As a result of the above-described violations, Plaintiff suffered damages as described above.

**COUNT III**
**PLAINTIFFS vs. ALL DEFENDANTS**
**20 U.S.C. SECTION 1400, ET SEQ.**

152. Plaintiff incorporates by reference paragraphs 1 through 151 herein set forth at length.

153. Defendants have violated the rights of Plaintiff Shawn McClendon under the Individuals with Disabilities Education Act 20 U.S.C. Section 1400, et seq. by failing to identify, evaluate and provide Plaintiff McClendon with a free appropriate public education, failing to properly place Plaintiff, failing to place Plaintiff in a safe and nurturing environment, and falsely accusing Plaintiff resulting in his arrest twice in retaliation for Plaintiff trying to obtain a free appropriate public education.

154. Defendants further violated Plaintiff's rights under I.D.E.A. by failing to fully implement the "child find" requirement with respect to Plaintiff McClendon and by failing to recognize their inability to provide a free appropriate public education.

155. As a result of the above-described violations, Plaintiff suffered damages as described above.

**COUNT IV**
**PLAINTIFFS vs. ALL DEFENDANTS**
**29 U.S.C. SECTION 794**

156. Plaintiff incorporates by reference paragraphs 1 through 155 herein set forth at length.

157. Defendants violated the rights of Plaintiff under Section 504 of the Rehabilitation Act of 1973 by failing to identify and evaluate within a reasonable time and transfer him to a school/facility which could provide Plaintiff McClendon with an appropriate education, and by discriminating against Plaintiff because of his disability.

158. As a result of the above-described violations, Plaintiff suffered damages as described above.

**COUNT V**
**PLAINTIFFS vs. ALL DEFENDANTS**
**FOURTEENTH AMENDMENT-THE EQUAL PROTECTION CLAUSE**

159. Plaintiff incorporates by reference paragraphs 1 through 158 herein set forth at length.

160. The Defendants' conduct in failing to provide Plaintiff with a free appropriate public education constitutes unlawful discrimination against Plaintiff and other children in violation of the equal protection clause of the Fourteenth Amendment and is violation of due process contrary to the Fourteenth Amendment to the United States Constitution.

161. Plaintiff has no adequate legal remedy for the protection of his rights.

162. As a result of the above-described violations, Plaintiff suffered damages as described above.

## COUNT VI
## PLAINTIFF vs. DEFENDANT DISTRICT
## AMERICAN WITH DISABILITIES ACT

163. Plaintiff incorporates by reference paragraphs 1 through 162 herein set forth at length.

164. Plaintiff is a qualified individual with a disability under Title II of the Americans With Disabilities Act, 42 U.S.C. Section 12132.

165. At all times relevant herein, Defendants failed to provide Plaintiff McClendon with an education in violation of the Americans With Disabilities Act, 42 U.S.C. Section 12132.

166. The actions by Defendants constitutes a pattern and practice of failing to provide students like Plaintiff Shawn McClendon in particular, an appropriate education for Plaintiff's educational needs.

167. The actions of Defendants constitutes a pattern of psychologically harming students like Plaintiff McClendon in particular.

168. The actions of Defendants constitutes a pattern and practice of delay so that Defendants do not have to pay, expend and/or provide Plaintiff with services, or trained teachers to help them meet the needs of children and Plaintiff McClendon in particular.

169. The Defendants' actions constitutes a lack of cautious regard for Plaintiff's rights to a free appropriate public education.

170. The Defendants' actions were carried out wilfully, wantonly, maliciously, and with such reckless disregard for the consequences as to reveal a conscious indifference to Plaintiffs' rights to a free appropriate public education.

171. As a result of the above-described violations, Plaintiffs suffered damages as described above.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

   a)   issue a declaratory judgment that Defendants have violated Plaintiff's rights as set forth above;

   b)   award Plaintiff compensatory and punitive damages;

   c)   award to Plaintiff his costs and attorney fees;  and

   d)   grant such other relief as may be appropriate.

## COUNT VII
## PLAINTIFF vs. ALL DEFENDANTS
## VIOLATION OF 22 Pa. Code § 14.36, 342.36 and 342.42

172.  Plaintiff incorporates by reference paragraphs 1 through 171 herein set forth at length.

173.  Defendants violated 22 Pa. Code § 14.36, 342.36 and 342.42 by not providing Plaintiff with a free and appropriate education and breached their duty to implement an appropriate program for Plaintiff.

174.  All Defendants caused the harm complained of herein, and the actions or inactions were performed under color of state law while acting in their official capacity.

175.  The actions of Defendants constitutes a pattern of psychologically harming students like Plaintiff McClendon in particular.

176.  The actions of Defendants constitutes a pattern and practice of delay so that Defendants do not have to pay, expend and/or provide Plaintiff with services, or trained teachers to help them meet the needs of children, and Plaintiff McClendon in particular.

177.  The Defendants' actions constitutes a lack of cautious regard for Plaintiff's rights to a free appropriate public education.

178. The Defendant's actions were carried out wilfully, wantonly, maliciously, and with such reckless disregard for the consequences as to reveal a conscious indifference to Plaintiffs' rights to a free appropriate public education.

179. As a result of the above-described violations, Plaintiffs suffered damages as described above.

### COUNT VIII
### PLAINTIFF vs. ALL DEFENDANT DISTRICT
### ADA RETALIATION

180. Plaintiff incorporates by reference paragraphs 1 through 179 herein set forth at length.

181. Defendants violated 42 U.S.C. § 12203(a) and (b).

182. Defendants knowingly and unlawfully discriminated against Plaintiff in retaliation for protected conduct, as described above throughout numbers 77-94.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

    a)    issue a declaratory judgment that Defendants have violated Plaintiff's rights as set forth above;

    b)    award Plaintiff compensatory and punitive damages;

    c)    award to Plaintiff his costs and attorney fees;  and

    d)    grant such other relief as may be appropriate.

### COUNT IX
### PLAINTIFF vs. ALL DEFENDANTS
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

183. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

184. Defendants' actions as described above, and enumerated as follows will be entered into evidence at trial, and were intentional, reckless, outrageous, and inflicted serious emotional distress upon Plaintiff:

a) Betty Barnes, Special Education Coordinator for William Penn High School, investigated and found that no I.E.P. for Special Education or speech therapy ever existed for Plaintiff from first grade until ninth grade, in 2002.

b) The Defendant School District violated their own policy pursuant to the Students With Disabilities Procedural Safeguards Handbook, and intentionally ignored Mrs. McClendon's multiple requests for approximately ten years, for Plaintiff to be evaluated and given a special education.

c) Defendants never logged in Mrs. McClendon's oral requests for her son to be evaluated for a special education.

d) Defendants never made a staff referral for Plaintiff to be evaluated for a special education, pursuant to II.B. of the Students With Disabilities Procedural Safeguards Handbook, nor did they notify Mrs. McClendon.

e) No staff member of the Defendant District ever informed Mrs. McClendon that her request was to be in writing, nor did Defendants assist Mrs. McClendon in reducing the request to writing, pursuant to II.C.1.a. of the Students With Disabilities Procedural Safeguards Handbook.

f) Upon investigation, the falsification of Plaintiff's permanent school record to state "possession of drug paraphernalia" instead of "use of tobacco products", has never been expunged.

-26-

g)   Plaintiff is not currently and has never been in a vocational program, work-based learning program, and is not receiving full-time learning support pursuant to his June 3, 2002 I.E.P., instead he is sent home every day at 11:45 a.m. and left to vascillate.

h)   Plaintiff's June 3, 2002 I.E.P. expired June 2, 2003 and no new I.E.P. has been issued.

185.  Defendant School Psychologist Monica Miller's May 22, 2002 report evidences that Plaintiff's cognitive ability may extend upward to the low average range.

186.  Plaintiff Shawn McClendon has suffered severe emotional distress and has feelings of being in a dark hole trying to dig his way out.

187.  As a proximate cause of Defendants' conduct, aforesaid, Plaintiff has suffered and continues to suffer damages relating to severe emotional distress, humiliation, and embarrassment and will expend an undetermined sum monetarily to treat with appropriate mental health care professionals to deal with these problems.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)   award Plaintiff compensatory damages including, but not limited to, pain, suffering, humiliation, and other damages as allowed by law in excess of $100,000.00, exclusive of interest and costs;

(b)   award reasonable costs and attorney's fees;

(c)   award punitive damages; and

(d)      grant any other relief this Court deems just and proper under the circumstances.

**FROST & ZEFF**

BY: _____

MARK B. FROST, ESQUIRE
ATTORNEY FOR PLAINTIFF
PIER FIVE AT PENN'S LANDING
PHILADELPHIA, PA 19106
(215) 351-3333

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAWN McCLENDON** | : | **CIVIL ACTION** |
| **2424 N. Marshall Street** | : | |
| **Philadelphia, PA 19133** | : | |
| | : | **NO.  03-1743** |
| v. | : | |
| | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA** | : | |
| **Administration Building** | : | |
| **Room 502** | : | |
| **21ˢᵗ Street, South of the Parkway** | : | |
| **Philadelphia, PA 19103** | : | |
| and | : | |
| **MR. PAUL VALLAS, CHIEF EXECUTIVE** | : | |
| **OFFICER** | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA** | : | |
| **2120 Winter Street, Room 219** | : | |
| **Philadelphia, PA 19103** | : | |
| and | : | |
| **LEONARD HEARD, PRINCIPAL** | : | |
| **WILLIAM PENN HIGH SCHOOL** | : | |
| **Broad and Master Streets** | : | |
| **Philadelphia, PA 19122** | : | |
| and | : | |
| **JIM McANULTY (current)/** | : | |
| **RENAY BOYCE (former), DIRECTOR OF** | : | |
| **SPECIAL EDUCATION** | : | |
| **Special Education Office** | : | |
| **Central Area Academic Office** | : | |
| **Wanamaker Middle School** | : | |
| **11ᵗʰ and Cecil B. Moore** | : | |
| **Philadelphia, PA 19122** | | |

## CIVIL ACTION - COMPLAINT

Plaintiff, Shawn McClendon, by and through his attorneys Frost & Zeff herein brings the

instant Complaint against the Defendants and alleges as follows:

-1-

## INTRODUCTION

1.  This action for monetary relief is brought by Plaintiff to redress the intentional violations by the Defendants pursuant to 42 U.S.C. Section 1983, Section 504 of the Rehabilitation Act of 1973, the Individuals with Disabilities Education Act 20 U.S.C. Section 1400, et seq. and the Due Process and Equal Protection Clause of the Fourteenth Amendment for damages caused by the Defendants failure to properly classify, failure to evaluate, and failure to provide necessary educational services to Plaintiff Shawn McClendon (hereinafter "Plaintiff" or "Plaintiff McClendon").

2.  This action arises under 42 U.S.C. Section 1983, the Individuals with Disabilities Education Act, 20 U.S.C. Section 1400, et seq., (I.D.E.A.), the Rehabilitation Act of 1973, 29 U.S.C. Section 794(a) and  the Fourteenth Amendment.

## JURISDICTION

3.  Jurisdiction is conferred upon this Court by 42 U.S.C. Section 1983, et seq., I.D.E.A., 20 U.S.C. Section 1400, et seq. as amended by Pub.L.No. 105-17 at Section 615(i)(3)(a) (1997), the Rehabilitation Act of 1973, the Fourteenth Amendment, 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343(a) which provides original jurisdiction for Plaintiffs' claims arising under the laws of the United States and other actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

4.  The amount in controversy exceeds One Hundred Thousand ($100,000.00) Dollars exclusive of interest and costs.

5.  Plaintiffs ask this Court to exercise supplemental jurisdiction over their State claims.

## VENUE

6.  All actions complained of herein have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendants who reside and do business within its jurisdictional limits.

## PARTIES

7.  Plaintiff McClendon is an eighteen year old individual who has been determined to be mentally retarded through a multidisciplinary evaluation process given to him.  He resides with his mother in Philadelphia, Pennsylvania, at the above-captioned address.  Plaintiff McClendon is a duly qualified disabled student under I.D.E.A.

8.  Defendant, School District of Philadelphia (hereinafter referred to as "Defendant District") is a public school district established under Pennsylvania law.  It receives federal funds under I.D.E.A.

9.  Defendant, Paul Vallas, (hereinafter referred to as "Defendant Vallas") is the Chief Executive Officer of the Philadelphia School District, conducting business at the above-referenced address.  Defendant Vallas is sued in his individual and official capacity.

10. Defendant, Leonard Heard, (hereinafter referred to as "Defendant Heard") is and was the Principal of William Penn High School, conducting business at the above-referenced address. Defendant Heard is sued in his individual and official capacity.

11. Defendant, Renay Boyce, (hereinafter referred to as "Defendant Boyce") was at all times relevant herein, the Director of Special Education for the School District of Philadelphia with her principal place of business at the above-captioned address.  At all times relevant herein, she is sued in her individual and official capacity.

-4-

12. Defendant, Jim McNulty, is the Director of Special Education for the School District of Philadelphia, with his principal place of business at the above captioned address.  At all times relevant herein, he is sued in his individual and official capacity.

## BACKGROUND

13.  The Individuals with Disabilities Education Act (I.D.E.A.) was created to assure that all children with disabilities have available to them a free appropriate public education which emphasizes public education and related services designed to meet their unique needs to assure that the rights of children with disabilities and their parents and guardians are protected to assist states and localities to provide for the education of all children with disabilities and to assess and assure the effectiveness of efforts to educate children with disabilities.  I.D.E.A. Section 1400(c).

14.  A free appropriate education consists of needed special education and related services designed to meet the child's unique needs, and provided in conformity with certain procedural safeguards specified by the act.  I.D.E.A., 20 U.S.C. Section 1414(a)(1)(A).

15.  I.D.E.A. requires each local educational agency such as a school district within a state, to identify, locate and evaluate every child with disabilities.  Ibid.

16.  Disabilities, as defined by I.D.E.A. includes various mental, emotional and physical impairments.

17.  The procedural safeguards provided by the Act include but are not limited to the right of the student's parents to participate in the development of an Individualized Education Program (IEP), and to obtain an administrative hearing (and, if needed, an administrative appeal and judicial review) on any complaint concerning the student's education.  20 U.S.C. Section 1401(18).

18. I.D.E.A. requires that before the filing of a civil action seeking relief that is also available under I.D.E.A., a Plaintiff must exhaust the I.D.E.A. procedures. 20 U.S.C. Section 1415(f), and Plaintiff has exhausted all of his administrative remedies.

19. According to the Rehabilitation Act of 1973 29 U.S.C. Section 794a, no person by reason of his or her disability may be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any executive agency. A program or activity is defined as a department, agency, special purpose district or other instrument of a state or of a local government or the entity of such state or local government that distributes such assistance. 29 U.S.C. Section 794(b)(1)(A)(B).

## **FACTS**

20. Plaintiff McClendon is an 18 year old student who resides in Philadelphia and has attended a number of schools within the Defendant District.

21. Plaintiff McClendon first attended John F. Hartranft Elementary School, scored below average in a city-wide testing program, and failed kindergarten.

22. Plaintiff was retained in first grade, he was working below grade level in reading, math, and comprehension.

23. Plaintiff's mother, Mrs. Maxine McClendon complained to teachers about Plaintiff's reading difficulties and speech impediment. As a result, Mrs. McClendon was informed that Plaintiff would receive speech therapy and that this would improve his reading ability.

24. Plaintiff McClendon was not supplied with speech therapy.

25.  Plaintiff McClendon was promoted from second grade to third grade.  Speech therapy was referred to again as a necessity for Plaintiff, but he did not receive any speech therapy.

26.  Plaintiff McClendon's scores on his second and third grade comprehensive test of basic skills were below average; Mrs. McCledon complained about Plaintiff needing to be evaluated for special education to no avail.

27.  Plaintiff would have been retained in the third grade but was assigned to fourth grade due to his previous first grade retention even though he could not put syllables together nor sound out words.

28.  Plaintiff McClendon continued to receive below average scores in the third and fourth grade in his comprehensive tests of basic skills, and Mrs. McClendon continued to implore Defendant District to help her son.

29.  Plaintiff failed fourth grade, but was promoted due to his prior retention in the first grade.

30.  Mrs. McClendon complained that the school had an obligation to give her son the necessary resources such as speech therapy and special education.  Furthermore, she did not want Plaintiff McClendon promoted as had been done in the third and fourth grade, due to his failing grades and no comprehension of the skills needed to succeed in all subjects.

31.  Plaintiff McClendon did receive some speech intervention in fourth and fifth grades.

32.  Mrs. McClendon became disconcerted and complained again because she could not understand why the school would not evaluate her child.

33.  Even after Mrs. McClendon complained about Plaintiff not being evaluated, there was still no effort by Defendant District to evaluate Plaintiff.

34.  In fifth grade, Plaintiff was in the fourth percentile for reading and the first percentile for mathematics, according to the 1996 Pennsylvania System of School Assessment: Individual Student Reports.

35.  Plaintiff received failing grades in fifth grade, but was promoted to sixth grade, due to his prior retention.

36.  In sixth grade, Plaintiff McClendon started attending the Elverson Middle School in Defendant District, and again received failing grades.

37.  Plaintiff transferred to John Wanamaker Middle School in seventh grade, but then he returned to Elverson Middle School in eighth grade in September of 1999.

38.  Mrs. McClendon complained to counselors and teachers that Defendant District needed to retain her son and give him the proper aid, but Plaintiff was assigned to seventh grade against Mrs. McClendon's protests.

39.  Plaintiff McClendon took the Stanford Achievement test in seventh grade and scored "Below Basic" in Reading, Mathematics and Science.

40.  Mrs. McClendon persisted in requesting that Plaintiff be put in a special education program.

41.  Mrs. McClendon was told that Defendant District would continue Plaintiff's speech therapy.  Mrs. McClendon requested educational support and said  that speech therapy was entirely inadequate, because Plaintiff's difficulties ran the gamut from little to no comprehension of basic skills in Reading, Science and Math to a speech impediment.

42.  Defendant District ignored Mrs. McClendon's persistent pleas for evaluating her son and for providing special education to her son.

-8-

43. Defendant District deliberately ignored Plaintiff McClendon's failing grades, prior retention, and his constant scores of "Below Basic/Average" on every test he had taken to this point in time. The Defendants failed to afford Plaintiff a special education.

44. Plaintiff McClendon failed eighth grade in 1999 and was retained, but he was still not evaluated for special education.

45. Mrs. McClendon complained about her son's need for special education once again.

46. There was a meeting between Mrs. McClendon, Plaintiff's teachers, counselors, and the school psychologist, and they informed Mrs. McClendon that Plaintiff would be given help.

47. Mrs. McClendon surmised that the aforementioned "help" meant that Plaintiff would receive special education.

48. Defendant District still failed to evaluate, qualify, and approve Plaintiff McClendon for special education while he was repeating eighth grade, and instead, just put him in a Resource Classroom.

49. Mrs. McClendon was under the impression that because Plaintiff was now finally in a special education classroom, that Plaintiff now had an IEP, when in actuality there was no IEP for special education. There was only an IEP for speech therapy.

50. While Plaintiff McClendon was in a Resource Classroom with the resource teacher, Ms. Taylor, Plaintiff began to attain better grades.

51. In 2000, Plaintiff entered into the ninth grade and attended William Penn High School. At this time, he was placed back into regular education classes.

52. Mrs. McClendon complained once again, and met with Ms. Betty Barnes, the special education coordinator, and informed Ms. Barnes that Plaintiff should be in special education classes not regular education classes.

53. Ms. Barnes in turn informed Mrs. McClendon that there was absolutely nothing in Plaintiff's school record to indicate that Plaintiff should be in special education classes.

54. As a result of Plaintiff McClendon being placed into regular education classes, he failed ninth grade and was retained to repeat ninth grade.

55. While Plaintiff was repeating ninth grade, Mrs. McClendon once again requested that Plaintiff be evaluated for special education.

56. On December 18, 2001, Mrs. McClendon signed a permission to evaluate paper. Under reason for referral, it stated at "parents request."

57. Plaintiff McClendon was still left to flounder academically and deteriorate behaviorally without receiving his evaluation and I.E.P., until Mrs. McClendon retained an Attorney in March of 2002.

58. Counsel for the Plaintiff, on or about March 8, 2002, requested that the Defendant District fund comprehensive, independent psychoeducational and diagnostic reading evaluations, because Defendant District had never conducted an appropriate evaluation of Plaintiff.

59. A psychological evaluation was done on or about March 15, 2002, by a school psychologist.

60. Plaintiff's January 25, 2002 Kaufman Brief Intelligence Test (K-BIT) part of his evaluation demonstrated that Plaintiff's vocabulary subtests scores were within the lower extreme range of mentally disabled.

-10-

61.  Plaintiff's January 25, 2002 Wechsler Individual Achievement Test (WIAT) portion of his March 15, 2002 psychological evaluation demonstrated that Plaintiff was within the "mental disabilities" range on all subtest areas (i.e. basic reading, reading comprehension, mathematics reasoning, numerical operations, listening comprehension and spelling).

62.  According to the Vineland Adaptive Behavior Scales Interview Edition, results indicate that his overall adaptive functioning is in the low range, and is below the expectancy for his chronological age.  It is at the age equivalent of eleven years old.

63.  It was determined by the March 15, 2002 psychological evaluation that Plaintiff was "eligible for special education and should be considered as a student who has mental retardation (educable)."

64.  On March 15, 2002, the multi-disciplinary team believed that Shawn's degree of need was such that he would not encounter success in the mainstream without specially designed instruction.

65.  A school evaluation report was completed regarding Plaintiff on March 22, 2002.

66.  Plaintiff McClendon was referred for the multidisciplinary evaluation by his mother, Maxine McClendon.

67.  The March 22, 2002 evaluation report stated that, according to current standardized testing (WIAT), Shawn's word recognition skills are at the beginning of third grade level, reading comprehension was at the beginning of third grade, spelling at the end of third grade, and mathematical problems at the mid-third grade level.

68. In the March 22, 2002 evaluation report, it was recommended that the IEP team consider Shawn to be a student with mental retardation (educable) and in need of specially designed instruction.

69. There was an IEP meeting on April 30, 2002.

70. An IEP was drafted on or about April 30, 2002, and was projected to start on May 3, 2002.

71. This April 30, 2002 IEP was to be in effect until June 3, 2002.

72. Plaintiff's April 30, 2002 IEP stated that he required special education programs and services, because Shawn's disability affected his involvement and progress in the general education curriculum due to his sub-average general intellectual functioning existing concurrently with deficits in adaptive behavior manifested during the development period that adversely affected his educational performance.

73. The Pre-hearing Conference document dated April 30, 2002, demonstrates that Plaintiff has some hearing difficulty for which he has received medical treatment.  There is no evidence that Defendant District ever performed a hearing test on Plaintiff, or ever recognized there was a hearing problem.

74. Plaintiff's April 30, 2002 Notice of Recommended Educational Placement (NOREP) recommendation was for Plaintiff to receive full-time learning support.

75. On May 1, 2002, Plaintiff's roster was changed from regular education to special education, at the age of 17 ½ years old.

76.  Plaintiff McClendon and his mother Maxine McClendon felt that after approximately twelve years of trying to obtain a special education program for Plaintiff, the efficacy of the April 30, 2002 IEP was inadequate because it was too little being done too late.

77.  When Mr. Michael Basch, Esquire, was retained to represent Plaintiff, against the School District, Defendant Heard began to retaliate due to Mr. Basch commencing an administrative legal process on behalf of Plaintiff.

78.  Defendant Heard, the principal of William Penn High School attempted to suspend Plaintiff almost every week.  These actions culminated into three incidents.

79.  Incident #1, on or about April of 2002, Defendant Heard falsely accused Plaintiff of pushing a student.  In reality, Plaintiff was punched by this student, twice in the arm, and Plaintiff was trying to push the student away.

80.  As a result of the above allegation, Plaintiff was suspended, arrested, charged with disorderly conduct and went to court.

81.  Plaintiff McClendon went in front of Judge Dougherty on April 8, 2002.

82.  Mrs. McClendon informed the Judge that Plaintiff was a learning support student, but was not receiving learning support at William Penn High School.  Judge Dougherty ordered an "IEP Forthwith," which resulted in the April 30, 2002 IEP.

83.  The charge of disorderly conduct against Plaintiff was eventually dismissed on or about October 16, 2002.

84.  Incident #2, on or about May 15, 2000, Plaintiff went into the mens room between classes and saw a group of boys smoking cigars.  An SLC Coordinator came into the bathroom and saw smoke; the group of boys then falsely accused Plaintiff of smoking.

-13-

85. As a result, Plaintiff was suspended for five days for the use of tobacco products; use of tobacco products and was placed on Plaintiff's school record.

86. Plaintiff was also subjected to blood tests, which were negative for tobacco as well as other drugs.

87. On or about March of 2002, the School District falsely altered Plaintiff's school record from "use of tobacco products" to "possession of drug paraphernalia."

88. During the April 30, 2002 IEP meeting, Plaintiff's family requested that this false charge of possession of drug paraphernalia be expunged.  It is not known if this charge was in fact expunged.

89. As of May 19, 2002, the "possession of drug paraphernalia" still remained on Plaintiff's school record.

90. Incident #3, on May 9, 2002, a school police officer falsely accused Plaintiff McClendon of being one of three students to assault another student.

91. In reality on May 9, 2002, Plaintiff had been a good Samaritan and had attempted to stop the fight.

92. As a result of this false accusation, Plaintiff was arrested on June 14, 2002.

93. Plaintiff was charged with aggravated assault, reckless endangerment of a person, simple assault, and criminal conspiracy.

94. On or about October 15, 2002,  Plaintiff was found not guilty, and all charges against him were dismissed.

95. On May 19, 2002, Plaintiff's psychological evaluation was revised, setting forth the results of additional tests.

-14-

96. The Wechsler Adult Intelligence Scale - Third Edition (WAIS) results evinced that Plaintiff's overall intelligence fell within the "Borderline" range of functioning and ranks him at the fourth percentile when compared with others has chronological age.

97. The Beery-Bunktenica Developmental Test of Visual-Motor Integration (VMI) demonstrated that Plaintiff's visual-motor skills fell within the average range.

98. Plaintiff was still found to be mentally disabled.

99. In Defendant's evaluation report dated May 22, 2002, it was noted that Plaintiff did "not exhibit a speech or language disability, and is not in need of specially designed instruction."

100. The conclusion of the May 22, 2002 evaluation report stated: "It is recommended that the IEP team consider Shawn to be a student with a specific learning disability and in need of specially designed instruction."

101. The evaluation report recommended the following: "The specially-designed instruction may include the following: monitoring of school/class attendance, show a model of end-product of directions, check progress and provide frequent feedback often in the first few minutes of each assignment, extended time, short test periods, preferential seating, concrete materials, simplified directions, graphic organizer, repeated directions, guided practice and any others determined by the IEP team."

102. Another IEP was transcribed on June 3, 2002, in which work based learning was applied to transition planning, and specifically designed instruction for students who have difficulty reading texts was also applied.

103. Plaintiff's June 3, 2002 notice of recommended educational placement remained full-time learning support.

104. Due to Defendant District admittedly ignoring its child find obligations for ten years, not evaluating Plaintiff for special education until Middle School, not developing an IEP for special education for him until eighth grade, then losing the IEP and placing Plaintiff in regular education where he was left to flounder and deteriorate, Defendant District entered into a Settlement Agreement with Plaintiff on October 3, 2002.  Attached hereto as Exhibit "A" is a true and correct copy of Plaintiff's October 3, 2002 Settlement Agreement.

105. This Agreement addresses Plaintiff's current IEP needs and his right to compensatory education.

106. Under the terms of the Settlement Agreement, Plaintiff was to attend a full-time learning support program at Douglas High School or another mutually agreeable High School (Exhibit "A").

107. Defendant District knowingly placed Plaintiff in the Douglas High School with the knowledge that this was a disciplinary school, and not an environment which would foster the nurturing emotional and academic support dire to Plaintiff's success as a student and as a human being.

108. Placing Plaintiff in Douglas High School was injurious to Plaintiff's progress as a student and did not afford him the opportunity of a free and appropriate education.

109. The fact that Douglas High School was a disciplinary type High School, was unknown to Mrs. Maxine McClendon.

110. Mrs. McClendon and Plaintiff suffered further persecution and retaliation by Defendant District by Plaintiff being placed at Douglas High School.

111. Plaintiff McClendon started school at Douglas High School on or about September 5, 2002.

-16-

112. Plaintiff began school on a Thursday and was informed that he was required to wear a uniform consisting of a shirt and khaki pants, by the following Monday.

113. Plaintiff had the appropriate khaki pants on Monday, but his mother did not have enough shirts for Plaintiff due to family economics.  As a result, Plaintiff was suspended for repeatedly not being in uniform, even though there was only one such occurrence.

114. On or about September of 2002, a student started a fight with Plaintiff for no apparent reason; Plaintiff was suspended as a result.

115. The student came back with a gang looking for Plaintiff for the purpose of beating up Plaintiff.

116. Plaintiff's mother, Mrs. McClendon, was made aware of this gang of boys pursuing Plaintiff.  As such, Plaintiff's mother did not want Plaintiff to attend Douglas High School any longer.

117. Mrs. McClendon kept Plaintiff at home due to her son being in imminent danger of physical bodily harm.

118. Jim McNulty (current Director of Special Education for the Central Area Cluster) wrote Mrs. McClendon a letter telling her to send Plaintiff back to Douglas High School.

119. Mrs. McClendon wrote a letter to Jim McNulty, Mimi Rose, Esquire, Counsel for Defendant District, and Michael Basch, Esquire explaining that she feared for Plaintiff's safety and felt he was in imminent danger of physical bodily harm at Douglas High School; Mrs. McClendon requested that Plaintiff be sent to Bok Vocational High School (which was in compliance with the Settlement Agreement) (Exhibit "A").

120. Jim McAnulty said he would set-up a meeting to discuss Plaintiff's transfer to Bok Vocational High School, but this has not occurred to date.

121. Ben Tutulio (Director of Vocation at Bok) told Mrs. McClendon that if Plaintiff attended Bok Vocational High School, he would "take Plaintiff under his wing."

122. Michael Basch, Esquire (who was retained by the Plaintiff) then wrote a letter to Counsel for Defendant District requesting that Plaintiff be placed in Bok Vocational High School, and was told by Defendant's Counsel that Ben Tutulio could be hired privately as a tutor for Plaintiff instead.

123. As of the time of the writing of this Complaint, Plaintiff is still waiting to attend Bok Vocational High School.

124. At all times relevant hereto, the Defendant District failed to properly identify, evaluate and create an IEP, and properly place Plaintiff for over ten years.  As a result, Defendant District's deliberate indifference, Defendant District failed to provide Plaintiff McClendon with a free appropriate education, causing Plaintiff to be irreparably harmed and to remain at an adaptive functioning age of eleven with a third grade Reading and Spelling capability, and a third to fourth grade Mathematical capability.

125. Failure by the Defendant District to fully and timely comply with the terms of this Settlement Agreement has resulted in additional harm.

126. Plaintiff has been retaliated against by Defendant Heard, as aforementioned in Paragraphs 77-94.

127. A compensatory education award can no longer further the legislative goal of making Plaintiff Shawn McClendon psychologically whole.  It is too little too late due to the shocking

unconscionable egregious treatment Plaintiff has been forced to endure from six years old to the present.

128. Nothing in Plaintiff's October 3, 2002 Settlement Agreement Release precludes or diminishes other claims by the parent and/or Plaintiff against the District such as claims for monetary damages.  This agreement has exhausted the administrative remedies under the Individuals with Disabilities Education Act.  (Exhibit "A")

**COUNT I**
**PLAINTIFFS vs. ALL DEFENDANTS**
**VIOLATION OF CIVIL RIGHTS**

129. Plaintiff McClendon incorporates by reference paragraphs 1 through 128 herein set forth at length.

130. Defendants have not provided Plaintiff with a free and appropriate education and have irreparably harmed him psychologically.

131. Defendants failed to properly identify, evaluate and create an IEP and properly place Plaintiff for over ten years.

132. Defendants continue to fail to properly place Plaintiff in a safe nurturing educational environment, where he will have full-time emotional/learning support.

133. Defendants failure to provide Plaintiff McClendon with a free appropriate public education is a systematic legal violation which violates Plaintiff's civil rights.

134. Defendants owed Plaintiff a duty to provide a free and appropriate public education under I.D.E.A. 20 U.S.C. Section 1400, et. seq., and the Rehabilitation Act of 1973 29 U.S.C. Section 794 (a).

135.  Plaintiff was retaliated against by Defendant Heard as aforementioned in Paragraphs 77-94; Plaintiff was arrested, charged and was later found not guilty at trial.

136. Defendants further violated IDEA by violating the Settlement Agreement in trying to keep Plaintiff at Douglas High School, which is unsafe, and not mutually agreeable to Mrs. McClendon.

137. Defendants further owed Plaintiff McClendon a duty to implement an appropriate program pursuant to 22 Pa. Code Section 14.36, 342.36 and 342.42.

138. Defendants breached the duties described in paragraphs 13, 14, 15, 17, 19, 30, 33, 42, 44, 48, 49, 51, 57, 81 and 111.

139. At all times material hereto, the actions and inaction of all Defendants were performed under color of state law while acting in their official capacities.

140. All Defendants caused the harm complained of herein in violation of I.D.E.A., the Rehabilitation Act of 1973, and 22 Pa. Code Section 14.36, 342.36 and 342.42.

141. The actions by Defendants constitutes a pattern and practice of failing to provide students like Plaintiff Shawn McClendon in particular, an appropriate education for Plaintiff's educational needs.

142. The actions of Defendants constitutes a pattern of psychologically harming students like Plaintiff McClendon in particular.

143. The actions of Defendants constitutes a pattern and practice of delay so that Defendants do not have to pay, expend and/or provide Plaintiff with services, or trained teachers to help them meet the needs of children and Plaintiff McClendon in particular.

144. The Defendants' actions constitutes a lack of cautious regard for Plaintiff's rights to a free appropriate public education.

145. The Defendants' actions were carried out wilfully, wantonly, maliciously, and with such reckless disregard for the consequences as to reveal a conscious indifference to Plaintiffs' rights to a free appropriate public education.

146. As a result of the above-described violations, Plaintiffs suffered damages as described above.

**COUNT II**
**PLAINTIFFS vs. ALL DEFENDANTS**
**42 U.S.C. SECTION 1983 AND IDEA**

147. Plaintiff incorporates by reference paragraphs 1 through 146 herein set forth at length.

148. Defendants failed to meet the educational needs of Plaintiff McClendon through their policies, customs, patterns, and practice of failure to properly identify, evaluate, create an appropriate IEP for Plaintiff and properly place Plaintiff.  The Defendants' conduct consisted of the failure to promulgate policies, customs, patterns, practices and procedures and a failure to train as follows:

    a)    having a large number of inherently deficient policy directives and/or administrative procedures to provide access of a free appropriate public education to Plaintiff McClendon;

    b)    continuing with policies, procedures, customs and practices which Defendants knew or should have known were causing injuries to students despite the obvious need to change, modify and/or correct said policies;

    c)    failing to provide Plaintiff McClendon with a free appropriate public education; and

    d)    failing to identify Plaintiff McClendon as an exceptional student under IDEA.

149. The above-described actions of the Defendants were the direct and proximate cause of Plaintiff's injuries aforesaid.

150. By reason of the aforesaid, Plaintiff's civil rights were violated as guaranteed by the federal statutes.

151. As a result of the above-described violations, Plaintiff suffered damages as described above.

## COUNT III
## PLAINTIFFS vs. ALL DEFENDANTS
## 20 U.S.C. SECTION 1400, ET SEQ.

152. Plaintiff incorporates by reference paragraphs 1 through 151 herein set forth at length.

153. Defendants have violated the rights of Plaintiff Shawn McClendon under the Individuals with Disabilities Education Act 20 U.S.C. Section 1400, et seq. by failing to identify, evaluate and provide Plaintiff McClendon with a free appropriate public education, failing to properly place Plaintiff, failing to place Plaintiff in a safe and nurturing environment, and falsely accusing Plaintiff resulting in his arrest twice in retaliation for Plaintiff trying to obtain a free appropriate public education.

154. Defendants further violated Plaintiff's rights under I.D.E.A. by failing to fully implement the "child find" requirement with respect to Plaintiff McClendon and by failing to recognize their inability to provide a free appropriate public education.

155. As a result of the above-described violations, Plaintiff suffered damages as described above.

-22-

**COUNT IV**
**PLAINTIFFS vs. ALL DEFENDANTS**
**29 U.S.C. SECTION 794**

156. Plaintiff incorporates by reference paragraphs 1 through 155 herein set forth at length.

157. Defendants violated the rights of Plaintiff under Section 504 of the Rehabilitation Act of 1973 by failing to identify and evaluate within a reasonable time and transfer him to a school/facility which could provide Plaintiff McClendon with an appropriate education, and by discriminating against Plaintiff because of his disability.

158. As a result of the above-described violations, Plaintiff suffered damages as described above.

**COUNT V**
**PLAINTIFFS vs. ALL DEFENDANTS**
**FOURTEENTH AMENDMENT-THE EQUAL PROTECTION CLAUSE**

159. Plaintiff incorporates by reference paragraphs 1 through 158 herein set forth at length.

160. The Defendants' conduct in failing to provide Plaintiff with a free appropriate public education constitutes unlawful discrimination against Plaintiff and other children in violation of the equal protection clause of the Fourteenth Amendment and is violation of due process contrary to the Fourteenth Amendment to the United States Constitution.

161. Plaintiff has no adequate legal remedy for the protection of his rights.

162. As a result of the above-described violations, Plaintiff suffered damages as described above.

**COUNT VI**
**PLAINTIFF vs. DEFENDANT DISTRICT**
**AMERICAN WITH DISABILITIES ACT**

163. Plaintiff incorporates by reference paragraphs 1 through 162 herein set forth at length.

-23-

164. Plaintiff is a qualified individual with a disability under Title II of the Americans With Disabilities Act, 42 U.S.C. Section 12132.

165. At all times relevant herein, Defendants failed to provide Plaintiff McClendon with an education in violation of the Americans With Disabilities Act, 42 U.S.C. Section 12132.

166. The actions by Defendants constitutes a pattern and practice of failing to provide students like Plaintiff Shawn McClendon in particular, an appropriate education for Plaintiff's educational needs.

167. The actions of Defendants constitutes a pattern of psychologically harming students like Plaintiff McClendon in particular.

168. The actions of Defendants constitutes a pattern and practice of delay so that Defendants do not have to pay, expend and/or provide Plaintiff with services, or trained teachers to help them meet the needs of children and Plaintiff McClendon in particular.

169. The Defendants' actions constitutes a lack of cautious regard for Plaintiff's rights to a free appropriate public education.

170. The Defendants' actions were carried out wilfully, wantonly, maliciously, and with such reckless disregard for the consequences as to reveal a conscious indifference to Plaintiffs' rights to a free appropriate public education.

171. As a result of the above-described violations, Plaintiffs suffered damages as described above.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

a)      issue a declaratory judgment that Defendants have violated Plaintiff's rights as set forth above;

b)      award Plaintiff compensatory and punitive damages;

-24-

    c)      award to Plaintiff his costs and attorney fees; and

    d)      grant such other relief as may be appropriate.

## COUNT VII
## PLAINTIFF vs. ALL DEFENDANTS
## <u>VIOLATION OF 22 Pa. Code § 14.36, 342.36 and 342.42</u>

172.  Plaintiff incorporates by reference paragraphs 1 through 171 herein set forth at length.

173.  Defendants violated 22 Pa. Code § 14.36, 342.36 and 342.42 by not providing Plaintiff with a free and appropriate education and breached their duty to implement an appropriate program for Plaintiff.

174.  All Defendants caused the harm complained of herein, and the actions or inactions were performed under color of state law while acting in their official capacity.

175.  The actions of Defendants constitutes a pattern of psychologically harming students like Plaintiff McClendon in particular.

176.  The actions of Defendants constitutes a pattern and practice of delay so that Defendants do not have to pay, expend and/or provide Plaintiff with services, or trained teachers to help them meet the needs of children, and Plaintiff McClendon in particular.

177.  The Defendants' actions constitutes a lack of cautious regard for Plaintiff's rights to a free appropriate public education.

178.  The Defendant's actions were carried out wilfully, wantonly, maliciously, and with such reckless disregard for the consequences as to reveal a conscious indifference to Plaintiffs' rights to a free appropriate public education.

179.  As a result of the above-described violations, Plaintiffs suffered damages as described above.

### COUNT VIII
### PLAINTIFF vs. ALL DEFENDANT DISTRICT
### ADA RETALIATION

180. Plaintiff incorporates by reference paragraphs 1 through 179 herein set forth at length.

181. Defendants violated 42 U.S.C. § 12203(a) and (b).

182. Defendants knowingly and unlawfully discriminated against Plaintiff in retaliation for protected conduct, as described above throughout numbers 77-94.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

a)   issue a declaratory judgment that Defendants have violated Plaintiff's rights as set forth above;

b)   award Plaintiff compensatory and punitive damages;

c)   award to Plaintiff his costs and attorney fees;  and

d)   rant such other relief as may be appropriate.

**FROST & ZEFF**

BY:   _____
MARK B. FROST, ESQUIRE
ATTORNEY FOR PLAINTIFF
PIER FIVE AT PENN'S LANDING
PHILADELPHIA, PA 19106
(215) 351-3333

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Amended Complaint was forwarded to the below-listed counsel on the 24th day of March, 2004, via First Class Mail, Postage Prepaid:

C. Reginald Johnson, Esquire
**The School District of Philadelphia**
**Board of Education**
2130 Arch Street
5th Floor
Philadelphia, PA 19103-1390

FROST & ZEFF

_____
MARK B. FROST, ESQUIRE
Pier 5 at Penn's Landing
7 N. Columbus Boulevard
Philadelphia, PA 19106
(215) 351-3333

March 24, 2004

C. Reginald Johnson, Esquire
**The School District of Philadelphia**
**Board of Education**
2130 Arch Street
5th Floor
Philadelphia, PA 19103-1390

**RE:**   **Shawn McClendon v. School District of Philadelphia, PA et al.**

Dear Mr. Johnson:

     Pursuant to the Court's Order dated March 19, 2004, enclosed herein is a copy of Plaintiff's Amended Complaint in the above-referenced matter, the original of which is being filed of record.

                               Very truly yours,

                               MARK B. FROST

MBF/ads
Enc.